FILED

2019 Sep-24  PM 09:46
U.S. DISTRICT COURT
N.D. OF ALABAMA



# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
## NORTHEASTERN DIVISION

| | | |
|---|---|---|
| **TIFFANY ASHLEY;** | ) | |
| **CHARLES RICHARD CORRY, and** | ) | |
| **BULLHEADED, LLC d/b/a** | ) | |
| **THE BULLPEN STEAKHOUSE,** | ) | |
| **individually and on behalf of** | ) | |
| **all others similarly situated,** | ) | |
| | ) | |
| **Plaintiffs,** | ) | |
| | ) | |
| **vs.** | ) | **Case No.: 5:19-cv-01180-LCB** |
| | ) | |
| **TYSON FARMS, INC. d/b/a** | ) | |
| **RIVER VALLEY INGREDIENTS;** | ) | |
| **JASON SPANN;** | ) | |
| **HYDRASERVICE, INC., and** | ) | |
| **JASPER WATER WORKS** | ) | |
| **AND SEWER BOARD, INC.,** | ) | |
| | ) | |
| **Defendants.** | ) | |

---

## PLAINTIFFS' OPPOSITION TO DEFENDANT JASPER WATER WORKS AND SEWER BOARD, INC.'S MOTION TO DISMISS

---

COME NOW the Plaintiffs, Tiffany Ashley, Charles Richard Corry, and Bullhead, LLC d/b/a The Bullpen Steakhouse, and hereby file this Opposition to the pending Fed. R. Civ. P. 12(b)(6) motion to dismiss filed by Defendant Jasper Water Works and Sewer Board, Inc. ("JWWSB"). Defendant JWWSB's motion to dismiss is due to be denied in its entirety. The express language of the Safe Drinking Water

Act ("SDWA"), namely the broad savings clauses contained therein, is plain and unambiguous. The language of the SDWA savings clauses authorizes and allows the Plaintiffs' claims that have been asserted in this case, readily disproves Defendant JWWSB's arguments in its motion to dismiss, and supersedes the legal authority relied upon by Defendant JWWSB.

Moreover, the legal authority relied upon by Defendant JWWSB in its motion to dismiss, in particular the case law cited in support of its arguments, is readily distinguishable from, and does not apply to, the specific facts, circumstances, allegations, claims, and context of the case *sub judice*, as said legal authority is premised upon the evaluation of allegations and claims that are based upon federal law and federal common law, not state law or state common law. The following additional grounds, in addition to those stated above, warrant the denial of Defendant JWWSB's motion to dismiss in its entirety, and the Plaintiffs respectfully request that the Court enter an Order denying the pending motions to dismiss filed by Defendant JWWSB for the reasons stated herein:

## I.   NARRATIVE SUMMARY OF UNDISPUTED FACTS

1. Plaintiffs Kathy Russell, Tiffany Ashley, and Krystal Stasko filed their original Complaint and commenced this action against Defendants Tyson Farms, Inc. d/b/a River Valley Ingredients ("Tyson"), Jason Spann ("Spann"), HydraService, Inc. ("HydraService"), and Jasper Water Works and Sewer Board,

Inc. ("JWWSB") on July 24, 2019. (Exh. <u>A</u>, Complaint). This case arises from a single event of water contamination involving a wastewater spill that occurred on June 6, 2019 that contaminated the waters of the Mulberry Fork area of the Black Warrior River. (Exh. <u>A</u>, Complaint, p. 8, ¶ 9).

2.      In the Complaint, the Plaintiffs assert that they have been caused to suffer significant economic damage, including loss of value of real and personal property owned by them, as well as lost earning capacity, business income, natural resources, and general use of their personal and real property and businesses as a result of the June 6, 2019 single event discharge and spill of wastewater into the Black Warrior River.  (<u>Id</u>., p. 2, ¶¶ 2-3).

3.      While Plaintiffs' Complaint alleges that Defendants Tyson, Spann, and HydraService are responsible for causing or contributing to cause the initial water contamination incident, Plaintiffs also allege in their Complaint that Defendant JWWSB "fail[ed] to plan for, contain, remediate, and/or warn Plaintiffs about" the water contamination incident, and further allege that those failures on the part of Defendant JWWSB have caused the Plaintiffs to suffer significant economic damage, including loss of value of real and personal property owned by them, as well as lost earning capacity, business income, natural resources, and general use of their personal and real property and businesses  (<u>Id</u>., p. 2, ¶¶ 2-3).

3

4.      Plaintiff's Complaint further alleges that Defendant JWWSB's "subsequent mishandling" of the "significant event" of the subject wastewater spill on June 6, 2019 caused economic damages to the Plaintiffs. (Id.).

5.      Plaintiffs Complaint asserts and alleges state common law claims of negligence and wantonness against Defendant JWWSB. (Id., pp. 24-28, ¶¶ 56-68; Defendant JWWSB's Motion to Dismiss, pp. 1, 4). Plaintiffs also assert claims of strict liability, trespass, nuisance, and seek injunctive relief against Defendant JWWSB based upon state law and state common law. (Exh. A, pp. 28-33).

6.      Plaintiffs' state law claims against Defendant JWWSB, including their claims based upon state common law, focus and center upon "the treatment, containment, and/or safeguarding of water ... provided to the public" in the wake of "the discharge of raw sewage, effluent materials, toxins, bacteria, and/or other contaminants into the Mulberry Fork of the Black Warrior River" and the "warning of the general public about the subject spill/contamination (and all risks, dangers and/or problems that might be associated with such a spill/contamination) during, and subsequent to the discharge of raw sewage, effluent materials, toxins, bacteria, and/or other contaminants into the Mulberry Fork of the Black Warrior River." (Id.).

7.      Plaintiffs' claims asserted against Defendant JWWSB also involve "its failure to anticipate such an issue concerning water quality" and allege that Defendant JWWSB "assumed incorrect facts about the spill and/or failed to

4

immediately take measures to protect the public from using, consuming, and/or being exposed to contaminated water." (Id.). Plaintiffs' claims against Defendant JWWSB in the Complaint also allege that "[d]espite not knowing 'what all went on up there,' and that Defendant JWWSB declared that 'the water is safe to drink." (Id.). Plaintiffs' Complaint further alleges that Defendant JWWSB "has admitted that it took no precautionary actions in the immediate aftermath of the Tyson spill" and that Defendant JWWSB "refused to warn the citizens of Walker County that they should not consume, use, and/or be exposed to the polluted water," despite JWWSB "publicly admitting that the water was 'dirty.'" (Id.).

8.      Plaintiffs state law claims also involve and focus on Defendant JWWSB's alleged "failure to take adequate steps to contain, remediate, and/or safeguard the contaminated water during and after the discharge of raw sewage, effluent materials, toxins, bacteria, and/or other contaminants into the Mulberry Fork of the Black Warrior River," its alleged "refusal to notify Plaintiffs and Class Members of the serious situation regarding contaminated water and the potential dangers, risks, and/or environmental, medical, and economic concerns associated with subject spill/contamination and the discharge of raw sewage, effluent materials, toxins, bacteria, and/or other contaminants into the Mulberry Fork of the Black Warrior River (and subsequent provision of such tainted water to the general public

by Defendant JWWSB)," and alleged failure "to take necessary actions to mitigate the danger associated with their operations." (Id.).

9.    The Safe Drinking Water Act contains two broad savings clauses.

10.    One savings clause in the SDWA declares that "[n]othing in this subchapter shall diminish any authority of a State or political subdivision to adopt or enforce any law or regulation respecting drinking water regulations or public water systems, but no such law or regulation shall relieve any person of any requirement otherwise applicable under this subchapter." See 42 U.S.C. § 300g-3(e).

11.    The other savings clause in the SDWA declares that [n]othing in this section shall restrict any right which any person (or class of persons) may have under any statute or common law to seek enforcement of any requirement prescribed by or under this subchapter or to seek any other relief." See 42 U.S.C. § 300j-8(e).

## II.    STANDARD OF REVIEW

The appropriate standard of review for a motion to dismiss filed pursuant to Fed. R. Civ. P. 12(b)(6) has been stated as follows:

> Rule 12(b)(6) enables a defendant to move to dismiss a complaint for 'failure to state a claim upon which relief can be granted.' Fed. R. Civ. P. 12(b)(6). A Rule 12(b)(6) motion to dismiss tests the sufficiency of a complaint against the 'liberal pleading standards set forth by Rule 8(a)(2).' Erickson v. Pardus, 551 U.S. 89, 94 (2007). A court may grant a Rule 12(b)(6) motion to dismiss when the allegations in a complaint 'on their face ... show that an affirmative defense bars recovery on the claim.' Marsh v. Butler County, Ala., 268 F.3d 1014, 1022 (11th Cir. 2001) (en banc). When evaluating a Rule 12(b)(6) motion to dismiss, a district court accepts as true the allegations in the complaint and

construes the allegations in the light most favorable to the plaintiff. <u>See</u> <u>Brophy v. Jiangbo Pharms. Inc.</u>, 781 F.3d 1296, 1301 (11th Cir. 2015).

<u>United Government Security Officers of America v. Tennessee Valley Authority</u>, 2017 WL 1196960 (N.D. Ala. Mar. 31, 2017). In assessing the merits of a Rule 12(b)(6) motion, the court must assume that all the factual allegations set forth in the complaint are true. <u>See</u>, <u>e.g.</u>, <u>United States v. Gaubert</u>, 499 U.S. 315, 327, 111 S. Ct. 1267, 1276, 113 L. Ed. 2d 335 (1991); <u>Powell v. Lennon</u>, 914 F.2d 1459, 1463 (11th Cir. 1990).

## III.  <u>ARGUMENT</u>

### A.  <u>The savings clauses contained in the Safe Drinking Water Act expressly permit Plaintiffs' claims against Defendant JWWSB in this action.</u>

Plaintiffs' claims against Defendant JWWSB in this action are not preempted by the SDWA or subject to dismissal in any way. The SDWA contains at least two plain and unambiguous savings clauses that clearly permit individual and class litigants such as the Plaintiffs to assert, file, pursue, and maintain their own civil claims based upon asserted violations of state common law.

The first savings clause in the SDWA appears in 42 U.S.C. § 300g-3(e), and reads as follows:

**(e) State authority to adopt or enforce laws or regulations respecting drinking water regulations or public water systems unaffected**

Nothing in this subchapter shall diminish any authority of a State or

7

> political subdivision to adopt or enforce any law or regulation
> respecting drinking water regulations or public water systems, but no
> such law or regulation shall relieve any person of any requirement
> otherwise applicable under this subchapter.

<u>See</u> 42 U.S.C. § 300g-3(e). The second savings clause in the SDWA appears in 42

U.S.C. § 300j-8(e), and reads as follows, in pertinent part:

> **(e) Availability of other relief**
>
> Nothing in this section shall restrict any right which any person (or class
> of persons) may have under any statute or common law to seek
> enforcement of any requirement prescribed by or under this subchapter
> or to seek any other relief.

<u>See</u> 42 U.S.C. § 300j-8(e).

On their face, the savings clauses in the SDWA represented by 42 U.S.C. §

300g-3(e) and 42 U.S.C. § 300j-8(e) and the remedies and enforcement actions they

expressly preserve and permit directly contradict and disprove Defendant JWWSB's

assertion that "the Safe Drinking Water Act's comprehensive regulatory scheme

occupies the field and leaves no room for regulation via state common law claims."

(Defendant JWWSB's Motion to Dismiss, p. 10). The "subchapter" referenced in 42

U.S.C. § 300g-3(e) and 42 U.S.C. § 300j-8(e) refers to 42 U.S.C. subchapter XII,

which is essentially the entire Safe Drinking Water Act. On their face, both 42 U.S.C.

§ 300g-3(e) and 42 U.S.C. § 300j-8(e) leave state law in the domain of drinking

water, including common law causes of action, intact and undisturbed. Accordingly,

and by the plain, unambiguous language of both savings clauses, Plaintiffs' claims

asserted against Defendant JWWSB in the Complaint are viable, expressly permitted and authorized by the SDWA, and are not preempted by the SDWA in any way.

The very existence of the broad savings clauses in the SDWA undermines Defendant JWWSB's argument and position that Congress in any way occupied, or intended to occupy, the entire field of public drinking water matters by enacting the SDWA. Moreover, in addition to the savings clauses noted above, in several other sections and at other points the SDWA acknowledges the possibility of additional drinking water regulation by states beyond the threshold floor established by the statutory scheme. See, e.g., 42 U.S.C. § 300g-2(a)(1) (implying that state drinking water standards can be more, but not less, stringent than federal standards established under SDWA); see also 42 U.S.C. § 300g-3(e) ("no such law or regulation shall relieve any person of any requirement otherwise applicable under this subchapter"). The SDWA sets the minimum level or floor - the lowest threshold - for drinking water quality and regulations, not the ceiling or upper limit. It does not restrict states, political subdivisions, or individuals in any way with respect to civil actions pertaining to implementation, imposition, or enforcement of *more* stringent (i.e. higher) drinking water standards or regulations.

Alternatively, even assuming (incorrectly for the sake of argument) that Congress did, in fact, occupy the field of public drinking water or intend to do so by enacting the SDWA, the field that would consequently be occupied would be much

more narrow than Defendant JWWSB argues, represents, and suggests in its motion to dismiss. At its core, the SDWA establishes a process for EPA identification of water contaminants and standard-setting for those contaminants. The SDWA does not provide a comprehensive structure for disaster or emergency response, nor a remedial scheme for injuries caused by tortious conduct, such as the single event disaster and emergency, and related tortious conduct, at issue in this action regarding the June 6, 2019 wastewater spill. See, e.g., 42 U.S.C. § 300i(a) (authorizing emergency actions by the EPA Administrator to protect health *if state and local authorities have not acted*). In numerous sections, the SDWA clearly evinces a legislative intent that state and local authorities, including individuals, assume and take primary responsibility for ensuring the safety of public drinking water, including by private civil action(s) under state law, if necessary - a right expressly preserved for and afforded to litigants such as the Plaintiffs via 42 U.S.C. § 300j-8(e). Defendant JWWSB's motion to dismiss is due to be denied.

**B.** **None of the cases cited and relied upon by Defendant JWWSB holds or stands for the proposition that state common law claims are preempted by the SDWA or EPA regulations, and therefore, all of the decisions relied upon by Defendant JWWSB are inapplicable to this action.**

Defendant JWWSB relies on three particular decisions and opinions to supports its argument that Plaintiffs' claims against it in this action are preempted. Those three cases are: (1) Mattoon v. City of Pittsfield, 980 F.2d 1 (1st Cir. 1992);

(2) <u>EQT Production Co. v. Wender</u>, 191 F. Supp. 3d 583 (S.D. W. Va. 2016); and

(3) <u>Missey v. City of Staunton, Ill.</u>, 2008 WL 4911877 (C.D. Ill. Nov. 13, 2008).

Each and every one of those decisions rests upon a determination and analysis involving federal claims and federal common law. Not one of those decisions involves any holding or determination that state law claims, especially state common law claims, are preempted by the SDWA or any related EPA regulatory scheme.

<u>Mattoon</u> did not involve state common law claims or actions. <u>Mattoon</u> addressed the scope of SDWA preemption only in the context of federal common law actions and § 1983 claims - *federal* causes of action. <u>Mattoon</u> does not involve, and has nothing to say about, the survival of state common law actions, which that opinion makes abundantly clear.

In the section of the <u>Mattoon</u> opinion titled "SDWA preemption," the First Circuit Court of Appeals reviews and addresses the lower federal district court's ruling that "the SDWA as a whole is sufficiently comprehensive to preclude *federal* common law remedies." <u>Mattoon</u>, 980 F.2d at 4 (emphasis added). The first subsection of the <u>Mattoon</u> opinion is then titled "1. *Federal* Common Law." <u>Id</u>. (emphasis added). That subsection of the <u>Mattoon</u> opinion then proceeds to engage in an analysis of *federal* common law claims, stating that "[t]he *federal* common law nuisance claims cannot escape preemption if the enactment of the SDWA 'occupied the field [of public drinking water regulation] ...'" <u>Id</u>. (quoting <u>Milwaukee v. Illinois</u>,

451 U.S. 304, 317 (1981)) (emphasis added). The <u>Mattoon</u> opinion goes on to further state that "[w]hen the question is whether federal statutory or *federal* common law standards should control the field, we 'start with the assumption' that Congress, not the courts, must decide." <u>Mattoon</u>, 980 F.2d at 4 (quoting <u>Milwaukee</u>, 451 U.S. at 317-18) (emphasis added).

Nothing in <u>Mattoon</u> speaks to actions brought under state common law. The First Circuit Court of Appeals' reliance on <u>Milwaukee</u> in expressing its analysis in <u>Mattoon</u> is telling because the <u>Milwaukee</u> opinion also deals only with the survival of *federal* common law actions after the enactment of the Federal Water Pollution Control Act Amendments (FWPCA) of 1972 (commonly referred to as the Clean Water Act). (emphasis added). The viability of federal common law actions to address interstate water pollution had been affirmed by the Supreme Court in an earlier round of litigation, <u>Illinois v. Milwaukee</u>, 406 U.S. 91 (1972), and only those federal common law actions were later held to have been displaced by the FWPCA in the <u>Milwaukee</u> decision. Indeed, with respect to the FWPCA, the U.S. Supreme Court has recognized that the savings clause in that statute was intended to "allow further enforcement of antipollution standards arising under other statutes *or state common law*." <u>See</u> <u>Middlesex County Sewerage Authority v. Nat'l Sea Clammers Ass'n</u>, 453 U.S. 1, 20 n. 31 (1981); <u>Boler v. Early</u>, 865 F.3d 391, 405 (6th Cir. 2017)

(citing <u>Sea Clammers</u>). <u>Mattoon</u> does not support Defendant JWWSB's argument for preemption of Plaintiffs' state common law claims in any way.

<u>EQT Production Co. v. Wender</u> decision is equally unavailing with respect to defendant JWWSB's preemption argument. <u>Wender</u> does not in any way stand for or support the proposition that the SDWA preempts state law. The West Virginia federal district court that issued the <u>Wender</u> opinion was reviewing a county ordinance that prohibited permanent disposal of wastewater from oil and gas operations in underground injection wells. <u>Wender</u>, 191 F. Supp. 3d at 587-88. The county ordinance at issue in <u>Wender</u> directly contravened the SDWA, which bars states from enacting such prohibitions that conflict with the SDWA. <u>See</u> 42 U.S.C. §§ 300h(b)(2) and 300h-1(c)(1). In such an instance, the West Virginia district court had little difficulty concluding that the SDWA savings clause could not authorize an ordinance which "directly violates [the] statutory requirement." <u>Wender</u>, 191 F. Supp. 3d at 601. The holding in <u>Wender</u> has no bearing on the question of whether state common law actions are preempted by the SDWA. Instead, the West Virginia district court in <u>Wender</u> simply restated what the Supremacy Clause already makes clear - that federal law takes precedence over contrary state law.

Lastly, Defendant JWWSB cites the Illinois federal district court opinion in <u>Missey v. City of Staunton, Ill.</u> As an example of a court that followed the <u>Mattoon</u> decision. <u>Missey</u>, like <u>Mattoon</u>, addressed only federal causes of action and did not

13

address any state cause of action. The Illinois district court's brief consideration of Mattoon in its opinion in Missey simply states that "[t]he Court agrees with the First Circuit's analysis in Mattoon and finds that any *constitutional* claims or other claims *under federal law* are preempted by the SDWA." Missey, 2008 WL 4911877 at *2 (emphasis added). Missey is yet another case cited and relied upon by Defendant JWWSB in its argument for preemption and dismissal of Plaintiffs' claims which does not support the argument it is trying to make for preemption of state common law claims by the SDWA.

None of the cases cited by Defendant JWWSB so much as discusses claims premised on state common law, let alone declares such claims to be preempted by the SDWA. Defendant JWWSB's difficulty finding authority which directly supports its argument for SDWA preemption of state law claims is understandable, as the United States Supreme Court has clearly spoken to the question of whether state common law survives federal statutes governing water quality.

In International Paper Co. v. Ouellette, 479 U.S. 481 (1987), a case involving a Vermont plaintiff's state law nuisance action against a New York pulp mill discharging into Lake Champlain, the U.S. Supreme Court discussed directly the relationship between state common law actions and the federal Clean Water Act (CWA), which contains a savings clause almost identical to the savings clause in the SDWA. See 33 U.S.C. § 1365(a). The U.S. Supreme Court concluded in Ouellette

14

that, although the CWA's savings clause did not allow the plaintiff in that case to sue the New York defendant under Vermont common law, "nothing in the Act bars aggrieved individuals from bringing a nuisance claim pursuant to the law of the source State [in this case, New York]. By its terms the CWA allows states such as New York to impose higher standards on its own point sources, and in Milwaukee II we recognized that *this authority may include the right to impose higher common-law as well as higher statutory restrictions*." Ouellette, 479 U.S. at 497 (emphasis added).

Courts have explained the limitations of the SDWA and its potential preemptive effect on other potential claims, including claims pursuant to state law. In Hartwell Corp. v. Superior Court, 38 P.3d 1098 (Cal. 2002), the California Supreme Court provided a well-reasoned explanation of the proper scope and application of the SDWA and the Mattoon decision, and their limitations, stating the following:

> in 1974, Congress enacted the federal Safe Drinking Water Act (federal SDWA) (42 U.S.C. § 300f et seq.), which prohibits states from enacting drinking water laws less stringent than those established by the EPA. (42 U.S.C. § 300g.) "Congress occupied the field of public drinking water regulation with its enactment of the [federal] SDWA. 'The purpose of the [federal SDWA] is to assure that water supply systems serving the public meet minimum *national standards* for protection of public health.' [Citation.] With minor exceptions, the SDWA applies 'to each public water system in each State.' 42 U.S.C. § 300g.... [A]lthough the primary responsibility for enforcement remains with the States, the Administrator is empowered to enforce State compliance. *Id.* §§ 300g–2, 300g–3." (Mattoon v. City of Pittsfield (1st Cir. 1992)

15

980 F.2d 1, 4.) Accordingly, the federal SDWA grants states primary authority to implement the provisions of the federal standards and allows states to set stricter water quality standards than those of the federal government. (42 U.S.C. § 300g–2(a); see 42 U.S.C. § 300g–1(b).) Although the federal SDWA preempts federal common law nuisance actions (<u>Mattoon v. City of Pittsfield</u>, *supra,* 980 F.2d at p. 4), state common law is not preempted. (<u>United States v. Hooker Chemical & Plastics Corp.</u> (W.D.N.Y. 1985) 607 F. Supp. 1052, 1055, fn. 3.)

<u>Hartwell Corp. v. Superior Court</u>, 38 P.3d 1098, 1107-07 (Cal. 2002).

Defendant JWWSB is simply mistaken in its misplaced argument that the SDWA preempts state law or state common law claims or actions based upon public drinking water safety, and therefore, its motion to dismiss is due to be denied.

### C.   There is no conflict preemption with respect to the SDWA and Plaintiffs' claims against Defendant JWWSB.

Defendant JWWSB's conflict preemption argument does not cite or rely upon any case which finds (or found) that conflict preemption existed between the SDWA and state common law claims. Defendant JWWSB highlights the role of the EPA in establishing water standards under the SDWA, implying that common law civil litigation would impermissibly interfere with the SDWA regulatory scheme. However, as has already been noted above, the SDWA envisions and provides for the possibility of state regulation that is more stringent than the federal minimum threshold, and the SDWA contains at least two savings clauses that expressly preserves that possibility. <u>See</u> 42 U.S.C. § 300g-3(e) and 42 U.S.C. § 300j-8(e). The reasoning in <u>Ouellette</u> is applicable here: in both the CWA and the SDWA, federal

statutes "specifically allow[] source states to impose stricter standards," and therefore "the imposition of source-state law does not disrupt the regulatory partnership established by the permit system." Ouellette, 479 U.S. at 499.

It would be particularly improper to dismiss Plaintiffs' claims using a conflict preemption theory on a Fed. R. Civ. P. 12(b)(6) motion. Plaintiffs' claims are phrased in the broadest of terms (but specific enough to meet Twombly/Iqbal pleading standards) such that, for the Court to grant Defendant JWWSB's motion to dismiss, the Court would have to be satisfied that *no possible understanding* of the Plaintiffs' claims could avoid an actual conflict with federal law. Such a burden and standard that would justify dismissal of Plaintiffs' claims on preemption grounds via a Rule 12(b)(6) motion cannot be met, and has not been met by Defendant JWWSB, in this instance. Accordingly, Defendant JWWSB's motion to dismiss is due to be denied.

## IV.   **CONCLUSION**

The Safe Drinking Water Act does not restrict, prohibit, or preempt the Plaintiffs' claims against Defendant JWWSB in this action in any way. Indeed, the SDWA and its broad savings clauses expressly preserves, provides for, and encourages claims of the nature and type as those the Plaintiffs are asserting in this civil action. The SDWA is designed and intended to address certain specified aspects of daily maintenance and water quality operations with respect to public drinking

water, not special circumstances involving single event pollution disasters such as the Tyson wastewater spill into the Mulberry Fork of the Black Warrior River on June 6, 2019. Plaintiffs state law claims, including Plaintiff's state common law claims, are unaffected by the SDWA or the case law and legal authority relied upon by Defendant JWWSB, as the legal authorities relied upon by Defendant JWWSB pertain solely to federal law and federal common law claims, and in no way addresses or affects claims based upon state law or state common law concepts.

Defendant JWWSB has presented no legitimate ground or basis for dismissal or Plaintiffs' claims or Complaint. Accordingly, its motion to dismiss is due to be denied.

WHEREFORE, PREMISES CONSIDERED, Plaintiffs Tiffany Ashley, Charles Richard Corry, and Bullhead, LLC d/b/a The Bullpen Steakhouse respectfully request that this Honorable Court enter an Order denying Defendant Jasper Water Works and Sewer Board, Inc.'s pending motion to dismiss in its entirety based upon the foregoing legitimate and compelling grounds presented to the Court.

Respectfully Submitted,

/s/ Justin C. Owen
Justin C. Owen (ASB-9718-I36O)
*Attorney for the Plaintiffs*

18

OF COUNSEL:

GOLDASICH VICK & FULK
2100 3rd Avenue North, Suite 400
Birmingham, AL 35203
Tel.: (205) 731-2566
Fax: (205) 731-9451
Email: justin@golaw.net

## CERTIFICATE OF SERVICE

I hereby certify that on the 24th day of September, 2019, I filed and served a copy of the foregoing upon all parties and attorneys of record via the Court's CM/ECF electronic filing system, U.S. Postal Service Certified Mail (return receipt requested), and U.S. Postal Service First Class Mail, which will send notification of such filing to the following persons of record:

Bryan O. Balogh, Esq.
R. Frank Springfield, Esq.
Robert S. Given, Esq.
D. Matthew Centeno, Esq.
Burr & Forman, LLP
420 20th Street North, Suite 3400
Birmingham, AL 35203
Tel.: (205) 251-3000
Fax: (205) 458-5100
Email: bbalogh@burr.com
        fspringfield@burr.com
        rgiven@burr.com
        mcenteno@burr.com
*Attorneys for Defendant HydraService, Inc.*

James Thomas Burgess, Esq.
Scott M. Roberts, Esq.
Burgess Roberts LLC
2017 Morris Avenue, Suite 100
Birmingham, AL 35203
Tel.: (205) 870-8611
Fax: (205) 870-8688
Email: tburgess@burgessroberts.com
        sroberts@burgessroberts.com
*Attorneys for Defendant Jasper Water Works and Sewer Board, Inc.*

Tyson Farms, Inc.
c/o   Edward S. Sledge, IV, Esq.
      Clyde Whittaker Steineker, Esq.
      William S. Cox, III, Esq.
      Davis S. Vaughn, Esq.
Bradley Arant Boult Cummings LLP
One Federal Place
1819 5th Avenue North
Birmingham, AL 35203
Tel.: (205) 521-8000
Fax: (205) 521-8800
Email: esledge@bradley.com
wsteineker@bradley.com
bcox@bradley.com
dvaughn@bradley.com

James L. Noles, Jr., Esq.
Spencer M. Taylor, Esq.
Lisa H. McCrary, Esq.
Barze Taylor Noles Lowther, LLC
Lakeshore Plaza
2204 Lakeshore Drive, Suite 330
Birmingham, AL 35209
Tel.: (205) 872-1032
Fax: (205) 872-0339
Email: jnoles@btnllaw.com
        staylor@btnllaw.com
        lmccrary@btnllaw.com
*Attorneys for Defendant Jason Spann*


/s/ Justin C. Owen
OF COUNSEL

20