FILED

2019 Nov-26  PM 10:38
U.S. DISTRICT COURT
N.D. OF ALABAMA

# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
## NORTHEASTERN DIVISION

| | |
|---|---|
| **TIFFANY ASHLEY;** ) | |
| **CHARLES RICHARD CORRY, and** ) | |
| **BULLHEADED, LLC d/b/a** ) | |
| **THE BULLPEN STEAKHOUSE,** ) | |
| **individually and on behalf of** ) | |
| **all others similarly situated,** ) | |
| ) | |
| **Plaintiffs,** ) | |
| ) | |
| **vs.** ) | **Case No.: 5:19-cv-01180-LCB** |
| ) | |
| **TYSON FARMS, INC. d/b/a** ) | |
| **RIVER VALLEY INGREDIENTS;** ) | |
| **JASON SPANN;** ) | |
| **HYDRASERVICE, INC., and** ) | |
| **JASPER WATER WORKS** ) | |
| **AND SEWER BOARD, INC.,** ) | |
| ) | |
| **Defendants.** ) | |

---

## PLAINTIFFS' OPPOSITION TO DEFENDANTS TYSON FARMS, INC. AND JASON SPANN'S MOTIONS TO DISMISS OR, IN THE ALTERNATIVE, MOTIONS FOR LEAVE TO CONDUCT DISCOVERY

---

COME NOW the Plaintiffs, Tiffany Ashley, Charles Richard Corry, and

Bullhead, LLC d/b/a The Bullpen Steakhouse, and hereby file this Opposition to the

pending Fed. R. Civ. P. 12(b)(1) and 12(b)(6) Motions to Dismiss filed by

Defendants Tyson Farms, Inc. d/b/a River Valley Ingredients ("Tyson") and Jason

Spann ("Spann").[1] Defendants Tyson and Spann's motions to dismiss assert the same arguments and grounds, and are due to be denied. Alternatively, if the Court is not inclined to deny Defendants Tyson and Spann's motions to dismiss at this juncture, the Plaintiffs are entitled to engage in jurisdictional discovery and have a separate evidentiary hearing regarding the Defendants' challenges to this Court's assertion of subject matter jurisdiction over the Plaintiffs' claims in this action. The Rule 12(b)(6) grounds for the motions to dismiss are mooted, as Plaintiffs consent to the consolidation of this action with its sister action, Case No. 5:19-cv-01179-LCB, and consequently, there is no longer any issue regarding alleged "claim splitting."

I.   **ARGUMENT**

   A.   **Plaintiffs have adequately alleged, and can show, that the jurisdictional requirements for federal subject matter jurisdiction under the Class Action Fairness Act ("CAFA") are met.**

Defendants Tyson and Spann challenge whether the Plaintiffs have sufficiently alleged that they meet two of the three jurisdictional requirements necessary for this Court to exercise original subject matter jurisdiction over this matter, and whether Plaintiffs can meet those jurisdictional requirements. Those two jurisdictional requirements or prongs for federal subject matter jurisdiction under

---

[1] Defendants HydraService, Inc. and Jasper Water Works and Sewer Board, Inc. have moved to join in Defendants Tyson and Spann's motions to dismiss.

CAFA are the "number of class members" and "amount in controversy" requirements. See 28 U.S.C. 1332(d)(2). Defendants Tyson and Spann assert that Plaintiffs have failed to adequately allege, and cannot show, that the number of putative class members exceeds 100 members, or that the aggregate amount in controversy exceeds $5,000,000. Defendants Tyson and Spann do not dispute, and concede, that there is minimal diversity between the parties in this action.

      **1.**    **Plaintiffs' Complaint adequately alleges, and the Plaintiffs can show, that the putative class is comprised or more than 100 members.**

Plaintiffs' Complaint sufficiently alleges that the putative class is comprised of more than 100 members. Plaintiffs can also support that jurisdictional allegation with competent evidence and proof.

As explained in greater detail in Plaintiffs' Opposition to Defendant Tyson's Motion to Strike the Class Allegations, the Plaintiffs' putative class is not a "fail safe" class. Membership or inclusion in the putative class does not require any finding of liability against the Defendants, and Plaintiffs' class description does not including proof of all elements of Plaintiffs' claims against the Defendants in this action, which is what is required for a "fail safe" class. Defendant Tyson's contention to the contrary is incorrect, and it is not, in fact, "impossible for the Court to determine class membership without trial or extensive, individualized mini-hearings on the merits." (Doc. 18). Plaintiffs' putative class and its description define

objective criteria by which inclusion in the class may be administratively determined to be proper, without the necessity of individualized inquiries or proof of liability on the part of any Defendant.

Plaintiffs' Complaint alleges that the individually named Plaintiffs and class members have been exposed to and detrimentally affected by contaminated water, raw sewage, effluent materials, toxins, bacteria, contaminants and/or other dangerous and unsafe materials, and have suffered injuries and/or damages including, but not limited to, injury to property, economic loss, and other damages in relation to the June 6, 2019 wastewater spill at Defendant Tyson's facility. (Doc. 1). The Complaint alleges that the exposure of the individually named Plaintiffs and class members occurred by exposure to both the water in and derived from the Black Warrior, as well as contaminated water that was processed and distributed by Defendant Jasper Water Works and Sewer Board, Inc. ("JWWSB") to residents and citizens of Alabama, including, but not limited to, persons located in Walker County, Alabama. (Doc. 1). Plaintiffs' Complaint specifically mentions how the Black Warrior River touches and affects Walker, Blount, Cullman, Tuscaloosa, and Jefferson counties. (Doc. 1, p. 6, ¶¶ 22-23).

The Complaint notes how the June 6, 2019 wastewater spill allegedly "triggered a massive fish kill in areas as far as 40 miles from" Defendant Tyson's River Valley facility, which is located in Cullman County, Alabama, "killing an

4

estimated 175,000 fish in the process." (Doc. 1). Plaintiffs' Complaint further alleges that after the June 6, 2019 wastewater spill, "alarming levels of the bacteria *Escherichia coli* (commonly referred to as *E. coli*)" were shown in water samples taken from the Black Warrior River approximately 28 miles downstream from the original location of the spill. (Doc. 1).

Plaintiffs' Complaint specifically alleges that "[t]he number of individuals and businesses in the affected area, which have been or may in the future be damaged by the subject wastewater spill/contamination, the subsequent handling of said wastewater spill/contamination, and/or any actual or planned remediation efforts exceeds 100." (Doc. 1). The Complaint alleges, or at a minimum it can be readily deduced or inferred from the allegations in the Complaint, that the individually named Plaintiffs and class members who are or were customers of Defendant JWWSB, and who were exposed to, ingested, consumed, or were adversely affected by contaminated water processed by JWWSB, constitute potential or likely class members and plaintiffs in this lawsuit. (Doc. 1).

Per the data collected during the latest national census conducted by the U.S. Census Bureau in 2010, the population of Walker County alone was 67,023 people, many of whom are, more likely than not, property owners or customers of JWWSB and use water from JWWSB, which during the time period made the basis of this action, was unsafely contaminated, dangerous, and harmful. Defendant Tyson itself

surveyed Walker County residents and citizens, and has presented evidence in support of its Motion to Dismiss showing at least several hundred Walker County residents who own properties in the affected area and are potential plaintiffs and class members in this action. (Doc. 18). The aforementioned numbers of potential plaintiffs and class members in this action, as evidenced and implicated thus far in the filings in this case, do not even include additional potential plaintiffs or class members residing or present, or owning property, in Cullman County (population 80,406), Blount County (population 57,322), Tuscaloosa County (population 194,656), or Jefferson County (population 658,466), and who have been exposed to, ingested, used, or were adversely affected by water that was contaminated as a result of the June 6, 2019 wastewater spill into the Black Warrior River, which reaches each of those counties in addition to Walker County.

In addition to the factual statistical data and population numbers implicated by Plaintiffs' Complaint, Plaintiffs' counsel currently has in excess of approximately ninety (90) plaintiffs and class members who have signed up to be part of this action. Plaintiffs' counsel has also been approached by dozens more people, including businesses, who have expressed a desire to also participate in this action as potential plaintiffs and class members. Plaintiffs will supplement this Opposition with evidence showing those numbers of potential plaintiffs and class members.

Plaintiffs have already alleged and shown that the individually named Plaintiffs in the Complaint have been injured and damaged by the subject wastewater spill. Even if only a small fraction of the residents, citizens, or businesses of Walker County, as well as Blount, Cullman, Tuscaloosa, and Jefferson counties was injured, damaged, or adversely affected as a result of the June 6, 2019 wastewater spill, that number would easily exceed the 100-person threshold necessary to provide this Court with federal subject matter jurisdiction under CAFA. Plaintiffs have made the requisite showing and have proved that the number of plaintiffs and putative class members in this action, more likely than not, exceeds 100 members. Defendants Tyson and Spann's motions to dismiss are due to be denied.

      **2.**      <u>**Plaintiffs' Complaint adequately alleges, and the Plaintiffs can show, that the aggregate amount in controversy exceeds $5,000,000.**</u>

Plaintiffs' Complaint alleges that "the matter in controversy exceeds the sum or value of $5,000,000, exclusive of interest and costs." (Doc. 1). In the Complaint, Plaintiffs specifically demand judgment against the Defendants for "[e]conomic and compensatory damages in amounts to be determined at trial, but not less than the $5,000,000 amount required by the Class Action Fairness Act," "punitive damages," "[p]re and post-judgment interest at the maximum rate allowable by law," and "[a]ttorney's fees and costs of litigation." (Doc. 1). Plaintiffs also request injunctive relief against all of the Defendants in this action. (Doc. 1).

The $5,000,000 amount in controversy requirement is "less of a prediction of 'how much the plaintiffs are ultimately likely to recover,' than it is an estimate of how much will be put at issue during the litigation; in other words, the amount is not discounted by the chance that the plaintiffs will lose on the merits." South Fla. Wellness, Inc. v. Allstate Ins. Co., 745 F.3d 1312, 1315 (11th Cir. 2014) (citing Pretka v. Kolter City Plaza II, Inc., 608 F.3d 744, 752 (11th Cir. 2010)). Potential developments, such as "[t]he possibility that the putative class will not be certified, or that some of the unnamed class members will opt out," are irrelevant to the jurisdictional analysis when considering the amount in controversy. Pretka, 608 F.3d at 772.

In addition to economic damages and other compensatory damages, punitive damages and requests for declaratory, if claimed by plaintiffs, are considered in determining whether plaintiffs and a putative class can satisfy the $5,000,000 amount in controversy requirement under CAFA. See McDaniel v. Fifth Third Bank, 568 Fed. App'x 729 (11th Cir. 2014) (punitive damages); South Fla. Wellness, 745 F.3d at 1313-16 (declaratory relief). With respect to punitive damages, Plaintiffs "need only prove the jurisdictional facts necessary to establish that punitive damages in an amount necessary to reach the jurisdictional minimum are at issue - that is, that such damages could be awarded." McDaniel, 568 Fed. App'x at 731 (emphasis in original) (citing Back Doctors Ltd. v. Metro Property & Cas. Ins. Co., 637 F.3d 827,

8

831 (7th Cir. 2011) (finding CAFA's amount in controversy requirement satisfied where a potential award of punitive damages could be high enough to reach the jurisdictional minimum)). Regarding declaratory or injunctive relief, the Eleventh Circuit Court of Appeals has explained:

> We have held that '[f]or amount in controversy purposes, the value of injunctive or declaratory relief is the value of the object of the litigation measured from the plaintiff's perspective.' Morrison v. Allstate Indem. Co., 228 F.3d 1255, 1268 (11th Cir. 2000) (quotation marks omitted). Stated another way, the value of declaratory relief is 'the monetary value of the benefit that would flow to the plaintiff if the [relief he is seeking] were granted.' Id. For CAFA purposes, we aggregate the claims of individual class members and consider the monetary value that would flow to the entire class if declaratory relief were granted. See 28 U.S.C. § 1332(d)(6); see also Cappuccitti v. DirecTV, Inc., 623 F.3d 1118, 1122 (11th Cir. 2010); Pretka, 608 F.3d at 772.

South Fla. Wellness, 745 F.3d at 1315-16.

The Plaintiffs in this action and its sister action, Case No. 5:19-cv-01179-LCB (which will likely be consolidated together into one action), claim and seek compensatory damages, punitive damages, and injunctive/declaratory relief. The amount in controversy in this case will, more likely than not, easily exceed the $5,000,000 threshold for this Court to exercise subject matter jurisdiction over the action under CAFA. The population, property ownership, and JWWSB customer numbers noted above alone support the inference that the amount in controversy in this action will exceed $5,000,000. Plaintiffs will also supplement this Opposition with additional evidence and information which further supports Plaintiffs' position

that the $5,000,000 amount in controversy requirement is met in this action. Defendants Tyson and Spann's motions to dismiss are due to be denied.

> **B.    CAFA's "local controversy" exception does not apply to this action, and Defendants Tyson and Spann have failed to meet their burden of proving all elements of the exception.**

In this context, in order for CAFA's local controversy exception to apply in a case, a party objecting to federal subject matter jurisdiction must prove all of the following:

> (I) greater than two-thirds of the members of all proposed plaintiff classes in the aggregate are citizens of the State in which the action was originally filed;
>
> (II) at least 1 defendant is a defendant --
>
>> (aa) from whom significant relief is sought by members of the plaintiff class;
>>
>> (bb) whose alleged conduct forms a significant basis for the claims asserted by the proposed plaintiff class; and
>>
>> (cc) who is a citizen of the State in which the action was originally filed; and
>
> (III) principal injuries resulting from the alleged conduct or any related conduct of each defendant were incurred in the State in which the action was originally filed; and
>
> (ii) during the 3-year period preceding the filing of that class action, no other class action has been filed asserting the same or similar factual allegations against any of the defendants on behalf of the same or other persons ...

28 U.S.C. § 1332(d)(4)(A).

The "local controversy" exception to federal subject matter jurisdiction under CAFA does not apply to this case. Defendants Tyson and Spann have failed to, and cannot, meet their requisite burden of proof in order for that exception to apply to this action.

1. **Defendants Tyson and Spann have failed to prove that the Plaintiffs seek significant relief from at least one Alabama Defendant, or that at least one Alabama Defendant's conduct forms a significant basis for the claims asserted by the plaintiffs and putative class members.**

Defendants Tyson and Spann have failed to, and cannot, prove that the Plaintiffs seek significant relief from any Alabama Defendant, or that any Alabama Defendant's conduct forms a significant basis for the claims asserted by the proposed plaintiff class. The Court's analysis of the local controversy issue must begin with the maxim that "CAFA's language favors federal jurisdiction over class actions and CAFA's legislative history suggests that Congress intended the local controversy exception to be a narrow one, with all doubts resolved 'in favor of exercising jurisdiction over the case.'" Evans v. Walter Industries, Inc., 449 F.3d 1159, 1163 (11th Cir. 2006) (quoting S. Rep. No. 109–14 at 42, U.S. Code Cong. & Admin. News 3 U.S. Code Cong. & Admin. News 3, 40)). It is well-established that the language and structure of CAFA indicates that Congress contemplated broad federal jurisdiction when it drafted and enacted CAFA, and CAFA "is a narrow exception

that was carefully drafted to ensure that it does not become a jurisdictional loophole." S. Rep. 109-14, at 39, U.S. Code Cong. & Admin. News at 38.

Defendants Tyson and Spann are required to prove that the local Defendants' conduct forms a significant basis for this action and the claims of the Plaintiffs and putative class, and that the Plaintiffs seek significant relief from the local Defendants in this action - "both of which showings are necessary for the exception to apply." See Hill v. Nat'l Ins. Underwriters, Inc., 641 Fed. App'x 899, 900 (11th Cir. 2016). "A local defendant is significant when, *inter alia*, the plaintiffs are seeking significant relief from him." Lemy v. Direct. Gen. Fin. Co., 559 Fed. App'x 796, 798 (11th Cir. 2014) (citing 28 U.S.C. § 1332(d)(4)(A)(i)(II)(aa)). "[A] class seeks 'significant relief' against a defendant when the relief sought against that defendant is a significant portion of the entire relief sought by the class." Evans, 449 F.3d at 1167 (citing Robinson v. Cheetah Transp., 2006 WL 468820 (W.D. La. Feb. 27, 2006); Kearns v. Ford Motor Co., 2005 WL 3967998 (C.D. Cal. Nov. 21, 2005)). Whether a putative class seeks significant relief from an in-state defendant includes "a comparison of ... each defendant's ability to pay a potential judgment." Evans, 449 F.3d at 1167 (quoting Robinson, 2006 WL 468820, at *3).

A "significant" defendant under local controversy exception analysis is akin to a "primary defendant" under the home state exception to CAFA. The Eleventh Circuit has described and explained the "primary defendant" distinction as follows:

12

The Senate Judiciary Committee's report on CAFA contains this statement about the meaning of the key term in the case before us:

> [T]he Committee intends that 'primary defend[a]nts' be interpreted to reach those defendants who are the real "targets" of the lawsuit—i.e., the defendants that would be expected to incur most of the loss if liability is found. Thus, the term "primary defendants" should include any person who has substantial exposure to significant portions of the proposed class in the action, particularly any defendant that is allegedly liable to the vast majority of the members of the proposed classes (as opposed to simply a few individual class members).

S. Rep. No. 109-14 at 43 (2005). A report issued by the House Judiciary Committee regarding an earlier version of CAFA contains materially identical language. See H.R. Rep. No. 108-144 at 38 (2003). The explanation in the committee reports makes the primary factor in answering the primary defendant question the potential monetary loss that defendant faces—whether it is the real target of the claims seeking damages, has substantial exposure to damages if liability is found, and would incur most of the loss if damages are awarded.

Hunter v. City of Montgomery, Ala., 859 F.3d 1329, 1336 (11th Cir. 2017).

In this action, as shown by the Plaintiffs' Complaint, the only "significant" or "primary" Defendant in this action that has the most ability to pay any adverse judgment - or at least a majority of it - is not any of the Alabama Defendants, but Defendant Tyson. (Doc. 1). Defendant Tyson is not a forum Defendant and is, instead, a foreign Defendant headquartered in Springdale, Arkansas. Jason Spann is an individual person who would not shoulder any majority or substantial amount of any verdict rendered against the Defendants in this action. Likewise, Defendant JWWSB and Defendant HydraService, Inc. are local businesses that would not

shoulder any majority or substantial amount of any verdict rendered against the Defendants.

Plaintiffs' complaint makes clear the fact that it is and always has been Defendant Tyson that is the "real target" of this litigation and the claims of the Plaintiffs and putative class members. Likewise, it is Defendant Tyson, and not the Alabama Defendants, whose conduct forms a significant basis of the Plaintiffs' claims in this action. The June 6, 2019 wastewater spill originated at Defendant Tyson's River Valley facility located in Cullman County. While Plaintiffs' Complaint alleges involvement of the local Defendants in the events surrounding the wastewater spill, the sentinel event of the wastewater spill itself is the crux of this action and the Plaintiffs' and class members' claims. The wastewater spill starts with Defendant Tyson, who was responsible for generating the waste and contaminated water that ultimately spilled into the Black Warrior River. It is from that seminal occurrence that the claims against all other Defendants (i.e. the local Defendants) arise, and Defendant Tyson is alleged to be responsible (or most culpable) for the occurrence of the wastewater spill.

The Alabama Defendants' conduct and involvement in this action has not been been shown by Defendants Tyson and Spann to be as significant or more significant than the conduct of Defendant Tyson. Moreover, Defendant Tyson is, without question, the named Defendant most likely (and almost certainly) to

shoulder the majority of any Plaintiffs' verdict in this action against the Defendants, regardless of any allegation of joint and several liability. Defendants Tyson and Spann have not met their burden of proving that any Defendant other than defendant Tyson is "significant" enough to warrant imposition of the local controversy exception to CAFA. Defendants Tyson and Spann's motions to dismiss are due to be denied.

        **2.**     **<u>Defendants Tyson and Spann have failed to prove that no class action lawsuit has been filed against any of the Defendants involving the same or similar circumstances in the three years preceding July 24, 2019.</u>**

Defendants Tyson and Spann have failed to, and cannot, prove that no class action lawsuit has been filed against any of the Defendants involving the same or similar conduct or circumstances in the three (3) years preceding the filing of Plaintiffs' Complaint on July 24, 2019. In support of that required element of CAFA's local controversy exception, Defendant Tyson submits to the Court, without any evidentiary support, the following subjective, self-serving declaration: "Tyson Farms is unaware of any other class action asserting the same or similar allegations against any of the named Defendants in the preceding three years." (Doc. 18, p. 18). That statement does not remotely satisfy Defendants Tyson and Spann's burden of proof under CAFA's local controversy exception. Evidence submitted by the Plaintiffs in support of this Opposition also shows that Defendant Tyson's statement in that regard is likely untrue.

15

On July 19, 2019, five (5) days before this action was commenced, another lawsuit was filed by forty-two (42) plaintiffs in the Circuit Court of Walker County, Alabama against Defendant Tyson, Defendant Spann, and Defendant HydraService, Inc. based upon the same June 6, 2019 wastewater spill that is the subject of this action - Case No. CV-2019-900252. (See Exh. A). On October 27, 2016, another lawsuit was filed by twenty-four (24) plaintiffs against Defendant Tyson in the Circuit Court of Marshall County, Alabama based upon Defendant Tyson's disposal and storage of waste from one of its chicken processing plants that allegedly caused "noxious odors to emanate from the waste pond and travel onto Plaintiffs' property ..." (See Exh. B). That is another case involving claims by numerous plaintiffs against a Defendant in this case based upon similar conduct and circumstances as those involved in this action.

On February 27, 2018, the U.S. Department of Justice issued a press release detailing how Defendant Tyson was sentenced to pay $2,000,000 in criminal fines, two years of probation, and ordered to pay $500,000 in restitution after "discharges at Tyson's slaughter and processing facility in Monett, Missouri ... led to a major fish kill event" in May 2014. (See Exh. C).In relation to that May 2014 wastewater discharge and fish kill event, the Attorney General of Missouri sued Defendant Tyson seeking fines for the water pollution event. (Id.). Similarly, on April 5, 2013, the U.S. Environmental Protection Agency (EPA) and the U.S. Department of

Justice announced a settlement with Defendant Tyson and several of its affiliate corporations based upon Clean Air Act violations related to "accidental chemical releases after anhydrous ammonia was released during incidents at facilities in Kansas, Missouri, Iowa, and Nebraska, resulting in multiple injuries, property damage, and one fatality." (See Exh. D).

The evidence presented by the Plaintiffs shows, and the reasonable inference from that evidence is, that Defendant Tyson and other named Defendants in this action have, in fact, had other class action-type lawsuit filed against them within the three years preceding the filing and commencement of this action on July 24, 2019, and that those lawsuit arose from, and are based upon, the same or similar types of events, circumstances, and conduct as those which are involved in this case. Accordingly, Defendants Tyson and Spann have failed to, and cannot, satisfy that requirement under CAFA in order to avail themselves of the local controversy exception. Defendants Tyson and Spann's motions to dismiss are due to be denied.

**C.** **Dismissal of Plaintiffs' claims and this action would be improper, as only remand or transfer of this action to state court is an available remedy to defendants Tyson and Spann in this context.**

Defendants Tyson and Spann incorrectly seek and request dismissal of the Plaintiffs' claims and this action with prejudice based upon an alleged failure to satisfy the requirements for federal subject matter jurisdiction under CAFA, or alleged application of CAFA's local controversy exception. That requested relief is

17

and would be improper under these circumstances, should the Court find merit in Defendants Tyson and Spann's motions and arguments. The only applicable remedy available to the Defendants in this context, should the Court grant their motions, would be to remand or transfer this action and Plaintiffs' claims to an appropriate state court, which in this case would be the Circuit Court of walker County, Alabama. Plaintiffs are not, by any measure, conceding that the motions and arguments proffered by the Defendants have any merit whatsoever. However, Plaintiffs deem it prudent to note the impropriety of the relief requested by Defendants Tyson and Spann in their motions to dismiss. In any event, Defendants Tyson and Spann's motions to dismiss are due to be denied.

**D.   If the Court is not willing to deny Defendants Tyson and Spann's motions to dismiss, Plaintiffs request leave to conduct jurisdictional discovery.**

Defendants Tyson and Spann's motions to dismiss are due to be denied. However, should the Court decide that it is not, at this juncture, inclined to deny the motions to dismiss in their entirety, Plaintiffs respectfully move and request that this Honorable Court allow the Plaintiffs to engage in jurisdictional discovery and conduct a full evidentiary hearing before deciding, with finality, the fate ot the pending motions to dismiss.

In the context of a Fed. R. Civ. P. 12(b)(1) motions to dismiss for lack of subject matter jurisdiction, "the district court must give the plaintiff an opportunity

for discovery and for a hearing that is appropriate to the nature of the motion to dismiss," as "courts have refused to grant such a motion before a plaintiff has had a chance to discover the facts necessary to establish jurisdiction." Williamson v. Tucker, 645 F.2d 404, 414 (5th Cir. 1981) (citing Surpitski v. Hughes-Keenan Corp., 362 F.2d 254 (1st Cir. 1966); Collins v. New York Central System, 327 F.2d 880 (D.C. Cir. 1963)).[2] "[I]n a factual challenge the district court must give the plaintiff an opportunity for discovery and for a hearing ..." McElmurray v. Consol. Gov't of Augusta-Richmond Cty., 501 F.3d 1244, 1251 (11th Cir. 2007) (citing Williamson). Accordingly, the Plaintiffs respectfully request leave from the Court to conduct necessary jurisdictional discovery and an evidentiary hearing if the Court is not inclined to immediately deny the Defendants' motions to dismiss.

## II.   **CONCLUSION**

Based upon the foregoing arguments and authorities, as well as the attached evidentiary submissions and the record presently before the Court, Plaintiffs Tiffany Ashley, Charles Richard Corry, and Bullhead, LLC d/b/a The Bullpen Steakhouse respectfully request that this Honorable Court enter an Order denying Defendants Tyson Farms, Inc. and Jason Spann's pending motions to dismiss in their entirety.

---

[2] In Bonner v. City of Prichard, 661 F.2d 1206, 1209 (11th Cir. 1981) (*en banc*), the Eleventh Circuit Court of Appeals adopted as precedent all Fifth Circuit decisions handed down prior to the close of business on September 30, 1981.

Respectfully Submitted,

_/s/_ Justin C. Owen
Justin C. Owen (ASB-9718-I36O)
*Attorney for the Plaintiffs*

OF COUNSEL:

GOLDASICH VICK & FULK
2100 3rd Avenue North, Suite 400
Birmingham, AL 35203
Tel.: (205) 731-2566
Fax: (205) 731-9451
Email: justin@golaw.net

## CERTIFICATE OF SERVICE

I hereby certify that on the 26th day of November, 2019, I filed and served a copy of the foregoing upon all parties and attorneys of record via the Court's CM/ECF electronic filing system, U.S. Postal Service Certified Mail (return receipt requested), and U.S. Postal Service First Class Mail, which will send notification of such filing to the following persons of record:

Bryan O. Balogh, Esq.
R. Frank Springfield, Esq.
Robert S. Given, Esq.
D. Matthew Centeno, Esq.
Burr & Forman, LLP
420 20th Street North, Suite 3400
Birmingham, AL 35203
Tel.: (205) 251-3000
Fax: (205) 458-5100
Email: bbalogh@burr.com
         fspringfield@burr.com
         rgiven@burr.com
         mcenteno@burr.com
*Attorneys for Defendant HydraService, Inc.*

James Thomas Burgess, Esq.
Scott M. Roberts, Esq.
Burgess Roberts LLC
2017 Morris Avenue, Suite 100
Birmingham, AL 35203
Tel.: (205) 870-8611
Fax: (205) 870-8688
Email: tburgess@burgessroberts.com
         sroberts@burgessroberts.com
*Attorneys for Defendant Jasper Water Works and Sewer Board, Inc.*

Edward S. Sledge, IV, Esq.
Clyde Whittaker Steineker, Esq.
William S. Cox, III, Esq.
Davis S. Vaughn, Esq.
Angela Marie Schaefer, Esq.
Kriston Laney Gifford, Esq.
Michael R. Pennington, Esq.
Scott B. Smith, Esq.
Zachary A. Madonia, Esq.
Bradley Arant Boult Cummings LLP
One Federal Place
1819 5th Avenue North
Birmingham, AL 35203
Tel.: (205) 521-8000
Fax: (205) 521-8800
         Email: esledge@bradley.com
         wsteineker@bradley.com
         bcox@bradley.com
         dvaughn@bradley.com
         aschaefer@bradley.com
         lgifford@bradley.com
         mpennington@bradley.com
         ssmith@bradley.com
         zmadonia@bradley.com
*Attorneys for Defendant Tyson Farms, Inc.*

James L. Noles, Jr., Esq.
Spencer M. Taylor, Esq.
Lisa J. McCrary, Esq.
Barze Taylor Noles Lowther, LLC
Lakeshore Plaza
2204 Lakeshore Drive, Suite 330
Birmingham, AL 35209
Tel.: (205) 872-1032
Fax: (205) 872-0339
Email: jnoles@btnllaw.com
       staylor@btnllaw.com
       lmccrary@btnllaw.com
*Attorneys for Defendant Jason Spann*


/s/ Justin C. Owen
OF COUNSEL